## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MICHAEL D. VAN DEELEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **Case No. 05-2017** |
| **ROBERT FAIRCHILD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### MEMORANDUM AND ORDER

Michael D. Van Deelen brings suit against Robert Fairchild, Adrian Allen and Steven Six, District Judges of Douglas County, Kansas and Sherry Bernhardt, Judge Fairchild's administrative assistant, under 42 U.S.C. § 1983 and Kansas law. Plaintiff claims that each defendant deprived him of, and retaliated against him for exercising, numerous constitutional rights. Plaintiff also brings state law claims for defamation against Bernhardt and negligence against Judge Fairchild. This matter comes before the Court on Defendants' Motion To Dismiss (Doc. #26) filed August 11, 2005. For reasons stated below, defendants' motion is sustained.

### Factual and Procedural Background

Plaintiff's second amended complaint may be summarized as follows:

Plaintiff is a Kansas resident and a frequent litigant in state court. Prior to 1997, plaintiff filed numerous suits in the District Court of Douglas County, Kansas ("Douglas County Court"). In each instance, the Douglas County Court randomly assigned a judge to preside over the matter. In 1997, plaintiff sued Judge Paula Martin, who had presided over one of plaintiff's cases, for violating his civil

rights.  Plaintiff and Judge Martin settled the matter out of court and plaintiff voluntarily dismissed the action.  After that, plaintiff filed additional actions in Douglas County Court.

In May of 2004, plaintiff scheduled a case management conference with Judge Robert Fairchild, Chief Judge of the Douglas County Court, regarding case 02C680.[1]  Plaintiff gave notice of the conference to opposing counsel.  On August 10, 2004 plaintiff and defendants appeared for the conference but, without explanation, Judge Fairchild chose not to hold it.

On September 30, 2004, plaintiff filed case 04C566 in Douglas County Court, which was assigned to Judge Jack Murphy.[2]  The court scheduled a hearing for January 10, 2005 regarding a motion for default judgment.  On approximately January 3, 2005, Judge Murphy's assistant informed plaintiff that Judge Murphy had recused himself and cancelled the default judgment hearing.  Plaintiff asked for an explanation, but Judge Murphy's assistant did not offer one.  Chief Judge Fairchild reassigned the case to Judge Steven Six, who had not yet taken office.  On January 10, 2005, plaintiff spoke to Sherry Bernhardt, Judge Fairchild's administrative assistant, to get information on when Judge Six would be available.  Bernhardt did not give plaintiff any information and refused to let him contact Linda Vogelsang, the Douglas County Court administrator, on the matter.  During plaintiff's encounter with Bernhardt, Judge Six arrived for a meeting in Judge Fairchild's chambers.  Plaintiff told Bernhardt that he planned to wait in Judge Fairchild's chambers to personally ask Judge Six.  Bernhardt would not let plaintiff remain in chambers or approach Judge Six on court property.  Bernhardt refused to take a message and told plaintiff that court security would remove him if he did not leave.

The next day, January 11, 2005, plaintiff called Judge Fairchild's chambers to again request

---

[1]        Plaintiff does not explain the nature of case 02C680 in his complaint.

[2]        Plaintiff does not explain the nature of case 04C566.

information on Judge Six's availability.  Bernhardt told plaintiff that after he left the previous day, she and Judge Fairchild decided that they would not address plaintiff's inquiry.  Plaintiff told Bernhardt that she and Judge Fairchild had violated his constitutional rights and that he could file a federal lawsuit.  Plaintiff told Bernhardt to relay that message to Judge Fairchild.  Bernhardt replied that she would tell Judge Fairchild that plaintiff had threatened them with a lawsuit.  Plaintiff received a letter from Judge Fairchild dated January 11, 2005 which stated that because of his conversation with Bernhardt, plaintiff's future communication with court personnel should be in writing.

On February 4, 2005, Judge Six assumed his duties with the Douglas County Court.  Judge Six recused himself from case 04C566, and it was reassigned (along with 02C680) to Judge Adrian Allen, a retired judge who previously served in the District Court of Shawnee County, Kansas.  Bernhardt serves as administrative assistant to Judge Allen.

On February 23, 2005, a party not identified in the complaint sued plaintiff in Douglas County Court case 05LM475, which was assigned to Judge Six.  On March 7, 2005, plaintiff filed his answer and counterclaim, which added two additional parties.  Plaintiff delivered copies of the counterclaim to the Douglas County Court Clerk for service on the additional parties.  The clerk told plaintiff that he had complied with court procedure and that the parties would be served.  Without explanation, however, Judges Fairchild and Six directed the clerk to withhold service.  On April 14, 2005, the clerk notified plaintiff that the parties had not been served.  On April 11, 2005, Judge Six recused himself from case 05LM475 and the court reassigned it to Judge Allen.  Without explanation, Judge Allen issued an order on April 15, 2005 which prohibited the clerk from serving any summons requested by plaintiff.

On January 13, 2005, plaintiff filed his original complaint (Doc. #1) in this case.  Under Section 1983, plaintiff claims numerous constitutional violations.  On March 7, 2005, defendants filed a motion

to dismiss (Doc. #5).  On March 30, 2005, plaintiff filed an amended complaint (Doc. #10).  Judge Fairchild and Bernhardt responded with another motion to dismiss (Doc. #12), filed April 4, 2005.  On July 8, 2005, because the Court had granted plaintiff leave to submit Section 1983 claims against Judges Six and Allen, the Court overruled both motions to dismiss (Doc. #5 & 12) as moot.  Plaintiff's second amended complaint alleges that by case reassignments, hearing cancellations, recusal, non-disclosure of a judge's availability, limitations on access to court personnel and refusal to allow service of summons, defendants have violated his constitutional rights and retaliated against him for exercising those rights.  On August 11, 2005, defendants filed their current motion to dismiss the second amended complaint.  Defendants seek to dismiss all counts on the grounds that (1) the Court lacks subject matter jurisdiction; and (2) the complaint fails to state claims upon which relief can be granted.  See Defendants' Motion To Dismiss (Doc. #26).[3]

## Rule 12(b)(1) Motion to Dismiss

The Court may only exercise jurisdiction when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  Scheideman v. Shawnee County Bd. of County Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3).  Plaintiff sustains the burden of showing that juridiction is proper, see id., and he must demonstrate that the case should not be dismissed.  See Jensen

---

[3]        Plaintiff sought permission to file a supplement to his second amended complaint pursuant to Rule 15(d), Fed. R. Civ. P.  See Exhibit A, Plaintiff's Motion For Leave To File Supplemental Pleading And Memorandum Brief In Support Thereof (Doc. #37).  By text entry, U.S. Magistrate Judge David J. Waxse overruled the motion because the Court entered an order (Doc. # 35) on September 29, 2005 which stayed all pretrial proceedings until the Court has ruled on the current motion to dismiss.  Even if the Court were to consider plaintiff's new allegation, it would not alter the result of this motion to dismiss.  See id. at ¶ 19a.

v. Johnson County Youth Baseball League, 838 F. Supp. 1437, 1439–40 (D. Kan. 1993).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take two forms: facial attacks on the complaint or factual attacks on the accuracy of the allegations in the complaint. See Holt v. United States, 46 F.3d 1000, 1002–03 (10th Cir. 1995). Defendants' motion to dismiss falls within the former category because the Court need not consider evidence outside the complaint.

### Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6), Fed. R. Civ. P., motion should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). The Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from those facts in favor of plaintiff. See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether plaintiff is entitled to offer evidence to support his claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The Court affords a pro se plaintiff some leniency and must liberally construe the complaint. Oltremari by McDaniel v. Kansas Social & Rehabilitative Serv., 871 F. Supp. 1331, 1333 (D. Kan. 1994). While pro se complaints are held to less stringent standards than pleadings drafted by lawyers, pro se litigants must follow the same procedural rules as other litigants. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992). The Court may not assume the role of advocate for a pro se litigant. Hall, 935, F.2d at 1110.

**Discussion**

**I.      Subject Matter Jurisdiction**

Defendants seek to dismiss plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P.  Specifically, defendants argue that this Court lacks jurisdiction because of (1) Eleventh Amendment immunity and (2) absolute judicial immunity.  Defendants also request that the Court decline to exercise its discretion to hear plaintiff's claims for declaratory relief.

**A.      Eleventh Amendment Immunity**

Defendants argue that Eleventh Amendment immunity bars plaintiff's official capacity damages claims and his claims for declaratory judgment.  Plaintiff argues that defendants — who are three state court judges and an administrative assistant to a state court judge — are not state officials.  Plaintiff urges that defendants are county employees, to whom Eleventh Amendment immunity does not apply.[4] Plaintiff also asserts that immunity only applies to claims for monetary damages.

The Eleventh Amendment applies to shield the state and "arms of the state" from suit in federal court.  Duke v. Grady Mun. Sch., 127 F.3d 972, 974 (10th Cir. 1997) (citations omitted).  Official capacity suits against state officials or employees under Section 1983 are treated as if against the state itself.  Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, for the Eleventh Amendment to apply in this action, defendants must be state officials or employees.

Article 3, Section 6 of the Kansas Constitution establishes the district courts of Kansas and their

---

[4]      Plaintiff bases his argument that defendants are county employees on his assertion that "Douglas County, Kansas, [sic] provides compensation and support to District Court judges in the form of health insurance, building infrastructure, supplies and possibly even salary."  Plaintiff's Response To Defendants' Motion To Dismiss And Memorandum Brief In Support Thereof (Doc. #28) at 8, filed August 15, 2005.

jurisdiction and sets the method by which judges are selected.  See also K.S.A. § 20-301a (jurisdiction and authority of district judges in Kansas).  Kansas state law clearly characterizes the district courts as arms of state government — part of a unified judicial branch along with the Kansas Supreme Court and Kansas Court of Appeals.  Wilkins v. Skiles, No. 02-3190, 2005 WL 627962, at *4 (D. Kan. March 4, 2005).  District court judges are state officials.  Schroeder v. Kochanowski, 311 F. Supp. 2d 1241, 1256 (D. Kan. 2004).  Under Kansas law, the chief judge of each judicial district has authority to appoint secretaries and clerical personnel as necessary to perform judicial and administrative functions of the court.  K.S.A. §§ 20-345.  Such court employees, appointed by a state official to serve in the district court, are undoubtedly state employees.  See Wilkins, 2005 WL 627962, at *4 (clerk of district court is state employee because appointed by chief judge to serve in state court).  Indeed, the only court personnel who are not considered "state employees" because they are paid by their respective counties, are "county auditors, coroners, court trustees and personnel in each trustee's office, and personnel performing services in adult or juvenile detention or correctional facilities."  Id. (citing K.S.A. § 20-162(a), (b)).  Judges Fairchild, Allen and Six are clearly state officials and not mere employees of Douglas County as plaintiff contends.  Bernhardt, like the court clerk in Wilkins, is also a state employee.  Thus, the Eleventh Amendment is applicable in this case.

The Eleventh Amendment confirms the sovereignty of the states by providing a shield from suits by individuals absent state consent.  Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).  To ensure the enforcement of federal law, however, the Eleventh Amendment permits suits against state officials and employees in their official capacities when plaintiff seeks prospective injunctive relief for a federal violation.  Ex Parte Young, 209 U.S. 123 (1908); see also Barger v. State of Kan., 620 F. Supp. 1432, 1436 (D. Kan. 1985).  Thus, for official capacity claims, federal courts may grant prospective

7

equitable relief, including appropriate ancillary measures, but cannot award retrospective relief such as damages and declaratory relief.  Meiners v. Univ. of Kan., 359 F.3d 1222, 1232–33 (10th Cir. 2004); Medcalf v. State of Kan., 626 F. Supp. 1179, 1183–84 (D. Kan. 1986) (citing Pennhurst State Sch. & Hosp., 465 U.S. 89, 118–20 (1984)).  On the other hand, the Eleventh Amendment does not bar actions for damages or declaratory relief against state officials or employees in their individual capacities. Clajon Prod. Corp. v. Petera, 70 F.3d 1566, 1571 n.9 (10th Cir. 1995) (citing Ex Parte Young, 209 U.S. at 159–60 & 167).  Plaintiff does not seek prospective injunctive relief against defendants.  Plaintiff seeks compensatory, punitive and nominal damages, and retrospective declaratory relief.  Therefore, to the extent plaintiff proceeds against defendants in their official capacities, the Eleventh Amendment bars all claims against defendants.  The Eleventh Amendment does not bar plaintiff's individual capacity claims for damages and declaratory relief.

### B.    Absolute Judicial Immunity

Defendants assert that the doctrine of absolute judicial immunity warrants dismissal of plaintiff's individual capacity claims.  Defendants urge that they are immune from suit because they acted toward plaintiff in their judicial roles.  Plaintiff responds that because he acted in an administrative role when he restricted plaintiff's access to the courthouse and court personnel, Judge Fairchild is not entitled to immunity.  Plaintiff also argues that each judge acted in the absence of all jurisdiction.  As for Bernhardt, plaintiff asserts that she is not entitled to absolute immunity because she is not a judicial officer and does not perform judicial functions.

Absolute judicial immunity is necessary to ensure that judges can perform their functions without harassment or intimidation.  Butz v. Economou, 438 U.S. 478, 512 (1978).  It is well-established that judges are absolutely immune from civil damages liability for acts performed in their judicial

capacities.[5]  De Young v. State of Kansas, 890 F. Supp. 949, 953 (D. Kan. 1995) (citing Stump v. Sparkman, 435 U.S. 349, 356–57 (1978)).  An act is judicial, whether in a formal court setting or not, if (1) it is a function normally performed by a judge and (2) the parties dealt with the judge in his judicial capacity.  Stump, 435 U.S. at 362.  Immunity does not extend to acts which are nonjudicial in nature, but administrative or ministerial acts may also be "judicial."  See Martinez v. Winner, 771 F.2d 424, 434 (10th Cir. 1985), judgment vacated as moot, 800 F.2d 230 (1986).  This broadly drawn immunity applies even to judicial acts "done in error, maliciously, or in excess of authority."  Id. at 356. Indeed, a judge is only liable for those acts taken in the clear absence of all jurisdiction.  Id. (citing Bradley v. Fisher, 80 U.S. 335, 351 (1872)).

Plaintiff alleges that Judges Fairchild, Six and Allen violated several of his constitutional rights. Specifically, plaintiff points to constitutional deprivations and retaliation which arise from case reassignments and management, recusal, and limitations on access to the courthouse and court personnel.  Although administrative in nature, the assignment of cases is a judicial function.  Martinez, 771 F.2d at 434, judgment vacated as moot, 800 F.2d 230 (1986).  Even if a particular case assignment is improper, the assigning judge is nevertheless entitled to judicial immunity.  Id.  Judges are also absolutely immune in their control of the court docket.  Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997).  Furthermore, absolute immunity has been attached to the imposition of restrictions on a party. See Whaley v. Kennedy, No. 97-7077, 1998 WL 208881, *2 (10th Cir. Apr. 29, 1998) (absolute immunity for acts done pursuant to filing restriction placed on party).  Absolute immunity similarly applies to a judge's discretionary power to recuse himself from a case. U.S. ex. rel. Price v. McFarland,

---

[5]      Absolute judicial immunity does not shield a judge from claims for declaratory relief. Schepp v. Fremont County, Wyo., 900 F.2d 1448, 1452 (10th Cir. 1990) (citing Pulliam v. Allen, 466 U.S. 522, 541–42 (1984)).

No. 04-4058, 2004 WL 3171649, *9 (D. Kan. Sept. 22, 2004).  Absolute judicial immunity extends beyond a judge's actions in a particular case.  The courtroom and courthouse premises are "subject to the control of the court," Sheppard v. Maxwell, 384 U.S. 333, 358 (1966), and a judge is entitled to absolute immunity for actions taken to restrict an individual's access to the courthouse in order to maintain the sanctity and decorum of the court.  Mullins v. Oakley, 437 F.2d 1217, 1218 (4th Cir. 1971).  A judge's action to limit an individual's contact with court personnel would clearly fall along the same line — particularly when, as here, the judge provides that written correspondence may continue.  Plaintiff's complaint does not allege conduct by Judges Fairchild, Six and Allen in the clear absence of jurisdiction.  Thus, they are entitled to absolute immunity.

Absolute immunity also applies to persons who perform judicial functions in aide of a judge and whose duties are integral to the judicial process.  Schroeder v. Kochanowski, 311 F. Supp. 2d 1241, 1257 (D. Kan. 2004); Dickerson v. Bates, 287 F. Supp. 2d 1251, 1253 (D. Kan. 2003) (citing Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000)) (court clerk entitled to immunity for, *inter alia*, mailing copies of orders to plaintiff).  Absolute immunity generally extends to non-judicial officers who perform discretionary judicial acts, and several circuits (including the Tenth Circuit) have held that "those performing ministerial acts at the direction of a judge are also entitled to absolute immunity."  Whitesel, 222 F.3d at 869.  The Seventh Circuit has recognized that "[t]he policy justifying an extension of absolute immunity in these circumstances is to prevent court personnel and other officials from becoming a lightning rod for harassing litigation aimed at the court."  Snyder v. Nolen, 380 F.3d 279, 287 (7th Cir. 2004) (quoting Richman v. Sheahan, 270 F.3d 430, 435 (7th Cir. 2001)).

Plaintiff alleges that Bernhardt violated several of his constitutional rights.  Specifically, plaintiff claims that Bernhardt violated his rights when she (1) refused to disclose information about Judge Six's

10

availability after being sworn in, (2) would not allow him to remain in Judge Fairchild's chambers or speak with Judge Six on the premises, (3) informed him that Judge Fairchild would not give information on Judge Six's availability, and (4) told Judge Fairchild that plaintiff threatened to file a civil rights suit. Plaintiff's claims arise from his contact with Bernhardt while she acted under Judge Fairchild's direction as his administrative assistant.  Without a doubt, the duties of a district judge's administrative assistant are integral to the judicial process.  Bernhardt is therefore entitled to absolute judicial immunity.

Defendants acted toward plaintiff in their judicial roles. The Court therefore dismisses plaintiff's damages claims against defendants in their individual capacities.

### C.    Individual Capacity Claims for Declaratory Relief

Defendants argue that plaintiff's individual capacity claims for declaratory relief should be dismissed.  They urge the Court to exercise its discretion and decline to entertain the claims.  Plaintiff responds that Section 1983 serves as the basis for his claims, over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  Plaintiff claims that because jurisdiction is clearly proper, a trial should determine whether he is entitled to declaratory relief.

In conjunction with Section 1983 claims for damages or injunctive relief, civil rights plaintiffs frequently seek declaratory relief pursuant to the federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.  See e.g., Hagans v. Lavine, 415 U.S. 528 (1974); Ward v. Utah, 398 F.3d 1239 (10th Cir. 2005); Moongate Water Co., Inc. v. Butterfield Park Mut. Domestic Water Ass'n, 291 F.3d 1262 (10th Cir. 2002); Cannon v. City and County of Denver, 998 F.2d 867 (10th Cir. 1993); Kerr v. Kimmell, 740 F. Supp. 1525 (D. Kan. 1990).  The Supreme Court has held that the DJA "validly confer[s] jurisdiction on federal courts to issue declaratory judgments in appropriate cases." Calderon v. Ashmus, 523 U.S. 740, 745 (1998).  Section 2201(a) provides, as follows:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).  Section 2201 thus provides federal courts discretion to grant declaratory relief.  Kunkel v. Continental Cas. Co., 866 F.2d 1269, 1273 (10th Cir. 1989).  The DJA does not, however, set out an independent basis for federal jurisdiction; it simply incorporates the case or controversy requirement of the Constitution.  Executive Risk Indem. Inc. v. Sprint Corp., 282 F. Supp. 2d 1196, 1202 (D. Kan. 2003).  Because Section 2201 is procedural and does not create a substantive cause of action, the Court may consider the jurisdictional question under Rule 12(b)(1), Fed. R. Civ. P., alone.  Id.

In conformity with the case or controversy limitation, to warrant declaratory judgment under the DJA, plaintiff must establish that the controversy is (1) definite and concrete, touching on the legal relations of the parties; and (2) of sufficient immediacy and reality.  Id. (citations omitted).  Whether a case or controversy exists is a matter of degree.  Id.  The ultimate question is whether declaratory relief will have some effect in the real world.  Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1182 (10th Cir. 2000) (citing Kennecott Utah Copper Corp. v. Becker, 186 F.3d 1261, 1266 (10th Cir. 1999)).  That the relief sought would give plaintiff the satisfaction of a declaration that he was wronged in the past is insufficient to create an actual, live controversy.  Bauchman for Bauchman v. West High Sch., 132 F.3d 542, 548–49 (10th Cir. 1997) (case or controversy requirement not met because declaratory relief claim found moot).

Even if subject matter jurisdiction exists, the Court has unique and substantial discretion to determine the propriety of declaratory judgment — the DJA is an enabling act and does not confer an

absolute right to relief.  <u>Executive Risk</u>, 282 F. Supp. 2d at 1202.  The Court must consider several

factors, including whether (1) a declaration would settle the controversy; (2) it would serve a useful

purpose in clarifying the legal relations at issue; (3) the declaration is merely being used for "procedural

fencing" or "to provide an arena for a race to res judicata;" (4) use of declaratory relief would increase

friction between federal and state courts and encroach upon state jurisdiction; and (5) a better and more

effective remedy is available.  <u>State Farm Fire & Cas. Co. v. Mhoon</u>, 31 F.3d 979, 983 (10th Cir. 1994)

(citing <u>Allstate Ins. Co. v. Green</u>, 825 F.2d 1061, 1063 (6th Cir. 1987)).  The Court must remain

mindful, however, that it "cannot decline to entertain such an action as a matter of whim or personal

disinclination."  <u>Pub. Affairs Assocs. v. Rickover</u>, 369 U.S. 111, 112 (1962).

  Plaintiff's second amended complaint seeks declarations as follows:

  3.  A declaratory judgment that the defendants unlawfully violated plaintiff's constitutional rights of freedom of assembly, freedom of association, freedom of speech, due process, equal protection of the laws and equal access to the courts.

  4.  A declaratory judgment that the defendants unlawfully retaliated against the plaintiff for plaintiff's exercising or attempted exercising of his constitutional rights of freedom of assembly, freedom of association , freedom of speech, due process, equal protection of the laws and equal access to the courts.

<u>Plaintiff's Amended And Supplemental Petition</u> (Doc. #19) at 10–11.  Plaintiff seeks declarations

framed in the past tense.  Even if plaintiff demonstrated past constitutional violations, the relief would

do nothing more than give plaintiff the satisfaction of a declaration that in the past, defendants wronged

him.  Retrospective declaratory relief would not impact the present or future legal relations of the

parties.  In this instance, declaratory relief would be hollow and fruitless.  Furthermore, even if subject

matter jurisdiction existed, the Court would be reluctant to intrude into the basic operations of the

Douglas County Court.  If the Court entertained plaintiff's claims for declaratory judgment, it would

undoubtedly risk creating friction between itself and state district courts by scrutinizing basal day-to-day

court operations such as case reassignments and management, recusal, security and administration. The Court therefore dismisses plaintiff's claims for declaratory relief.

## II.      Supplemental Jurisdiction

In its discretion, the Court may exercise supplemental jurisdiction over a state law claim if it sufficiently relates to a pending claim over which the Court has original jurisdiction. See 28 U.S.C. § 1367(a). The Court need not exercise supplemental jurisdiction, however, and it may decline to do so if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c). Here, the Court has dismissed all of plaintiff's federal claims. It declines to exercise supplemental jurisdiction over plaintiff's state law claims. The Court therefore dismisses without prejudice plaintiff's defamation and negligence claims.

**IT IS THEREFORE ORDERED** that defendants' Motion To Dismiss (Doc. #26) filed August 11, 2005, be and hereby is **SUSTAINED**. The Court dismisses all of plaintiff's federal claims pursuant to Rule 12(b)(1), Fed. R. Civ. P, and does not address whether defendants are entitled to dismissal under Rule 12(b)(6), Fed. R. Civ. P. The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims and they are hereby dismissed without prejudice.

Dated this 1st day of December, 2005 at Kansas City, Kansas.


s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

14